UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

MICHAEL W. WYNNE,
SECRETARY
UNITED STATES AIR FORCE

Case No. 3:06-cv-122

Plaintiff,

-vs-

Judge Thomas M. Rose

COMMEMORATIVE AIR FORCE,

Defendant.

_____

ENTRY AND ORDER OVERRULING THE COMMEMORATIVE AIR
FORCE'S MOTION TO TRANSFER (Doc. #18)
_____

This dispute is between Michael W. Wynne, Secretary of the United States Air Force (the "USAF") and the Commemorative Air Force (the "CAF"). The dispute is about the right to possess an F-82-B Twin Mustang aircraft serial number 44-65162 (the "Aircraft").

Now before the Court is the CAF's Motion To Transfer. (Doc. #18.) This Motion is now fully briefed and ripe for decision.

## BACKGROUND

This background information is based upon the Complaint and evidence that is in the record. Evidence in the record includes evidence submitted with the Motion that is now before the Court as well as evidence previously submitted including the Affidavit of Major General Charles D. Metcalf, USAF (Retired) ("General Metcalf").[1] (See doc. #7.)

---

[1] The CAF makes much of the fact that the USAF offers no evidence in its Response to the Motion To Transfer. However, the Court may consider evidence already on the record as well as factual allegations included in the Complaint.

<u>The Parties</u>

The CAF operates and displays World War II-era combat aircraft as well as aircraft from subsequent eras. It is chartered as a non-profit Texas Corporation with its principal place of business in Midland, Texas.

One of the CAF's largest wings is located in Camarillo, California. The Camarillo, California Wing currently has over 260 members and approximately 10 assigned aircraft. The CAF has an Inland Empire Wing located at the Riverside Airport, state unknown, and a 3rd Pursuit Squadron located in Upland, California. The CAF also has a squadron located in Dayton, Ohio which currently has approximately 26 members and operates one aircraft.

The Aircraft is located in Midland, Texas, as are the CAF's records on the Aircraft. The Aircraft was assigned, but not physically transferred, to the Southern California Wing on January 16, 2007, which is just before the California and Ohio Actions, discussed below, were filed.

The Director of the National Museum of the United States Air Force ("NMUSAF") is responsible for keeping track of surplus military equipment, such as the Aircraft, on loan to various museums and public institutions throughout the world. The NMUSAF, and its records, are located in Dayton, Ohio. General Metcalf, the Director of the NMUSAF, represented the USAF in the attempt to negotiate the return of the Aircraft to the USAF.

<u>The Events</u>

In October of 1954, the NMUSAF released the Aircraft to Lackland Air Force Base ("Lackland") in San Antonio, Texas for use in Lackland's museum program. The Aircraft remained on display in Lackland until April of 1966.

On April 15, 1966, the USAF donated the Aircraft to the CAF. L.P. Nolen, who was President of the CAF at the time, signed a "Certificate" whereby the CAF Museum agreed to use the donated Aircraft for display purposes. The Certificate also contained a provision that if at any time the Aircraft was no longer used for the purpose for which it was donated or retention of the Aircraft by the CAF was no longer desired, title to the Aircraft would revert to the USAF. Title would revert to the USAF if the USAF exercised the return option within sixty days after receipt of written notice.

The Aircraft was released to the CAF from Kelly Air Force Base in Texas. The CAF wanted to fly the Aircraft which required registration as a civilian aircraft. Pursuant to a request, the USAF provided a transfer certificate to establish the CAF's title in the Aircraft so that it could be registered as a civilian aircraft.

Civilian registration was obtained and the Aircraft was flown on numerous occasions until October of 1987 when it crashed at an air show. Then, in September 2002, the CAF entered into an agreement to trade the Aircraft and the wreckage of a Lockheed P-38 aircraft to NPA Holdings, LLC ("NPA") in exchange for a completely restored and airworthy Lockheed P-38L aircraft.

The General Metcalf, Director of the NMUSAF, learned of the trade in the January 2003 issue of the magazine "Air Classics." He then informed Mr. Bob Rice ("Mr. Rice"), the CAF's Executive Director, that the attempted sale of the Aircraft violated the terms of the Certificate. The CAF then cancelled their agreement to trade the Aircraft.

From late in 2002 until April of 2006, the USAF, represented primarily by General Metcalf, and the CAF, represented primarily by Mr. Rice, attempted to agree on ownership,

possession, and operation of the Aircraft. The discussions between these individuals did not result in an agreement.

## Procedural Background

On April 3, 2006, the CAF filed a complaint for declaratory relief and equitable estoppel in the United States District Court for the Central District of California (the "California Action"). Twenty-three days later, the USAF filed the Complaint in this case for a declaratory judgment that the CAF violated the terms of a conditional release, for breach of contract, and for replevin (the "Ohio Action").

On August 28, 2006, this Court stayed this action pending a ruling on the CAF's action in California. The USAF filed two successive motions to dismiss the California Action for lack of subject matter jurisdiction, both of which were granted with leave to amend. Thereafter, as a result of concerns about establishing subject matter jurisdiction, the CAF elected not to further amend its complaint in the California Action and stipulated to a voluntary dismissal without prejudice.

The California Action was dismissed on April 27, 2007. This Court lifted the stay in the Ohio Action and the CAF answered the Complaint filed by the USAF in the Ohio Action. The CAF now seeks, pursuant to 28 U.S.C. § 1404(a), to transfer this, the Ohio Action, to the United States District Court for the Western District of Texas or the United States District Court for the Central District of California.

## Potential Witnesses

Rice, the CAF's President, identifies twelve individuals, including himself, who "may be" witnesses in this matter. He also indicates the matters upon which they could be expected to

testify. Three of the possible witnesses reside in Midland, Texas; one resides in Austin, Texas; one resides in San Benito, Texas; one resides in Dickinson, Texas; one resides in Dallas, Texas; one resides in Florida; one resides in Minnetonka, Minnesota; one resides in Chatsworth, California; one resides in Hobbs, New Mexico and one resides in Wichita, Kansas.

There is duplication of the matters upon which individual witnesses could be expected to testify. For example, nine of the witnesses are expected to testify about the USAF's claimed reversionary interest in the Aircraft, seven of the witnesses are expected to testify about the USAF's alleged failure to conduct annual checks on the status of the Aircraft, and three of the identified witnesses are expected to testify about the attempted trade of the Aircraft. None of these duplicate-testimony-witnesses include the CAF's custodian of records or the person from Air Classics magazine most knowledgeable about publication of the information regarding the Aircraft.

The USAF indicates that it too will be calling witnesses. The USAF identifies the Director of the NMUSAF, the custodian of records for the NMUSAF and one or two other members of the Director's staff as potential witnesses.

## RELEVANT GOVERNING LAW

Motions to transfer venue, such as the one now before the Court, are governed by 28 U.S.C. § 1404(a). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

District Courts have wide discretion in deciding motions to transfer. *Van Dusen v. Barrack*, 376 U.S. 612 (1964); *Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955). Further,

"[s]ection 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645-46. Finally, the moving party, the CAF in this Motion, bears the burden of proving why a court should grant a transfer. *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

Pursuant to Section 1404(b), the threshold consideration is whether the action "might have been brought" in the court to which the movant wishes to transfer. *Jamhour v. Scottsdale Insurance Co.*, 211 F.Supp.2d 941, 945 (S.D. Ohio 2002)(citing *Sky Technology Partners LLC v. Midwest Research Institute*, 125 F.Supp.2d 286, 291 (S.D.Ohio 2000)). An action might have been brought in another court if:

> a. the other court has jurisdiction over the subject matter of the action,
> b. venue is proper there, and
> c. the defendant is amenable to process issuing out of the other court.

*Id.*

If the threshold consideration is satisfied, the Court next weighs certain factors to determine whether a transfer would comport with Section 1404(a). The factors to be considered are similar to those weighed by courts in determining *forum non conveniens* motions except that transfers pursuant to Section 1404(a) may be granted "upon a lesser showing of inconvenience." *Jamhour*, 211 F.Supp.2d at 945 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

The factors to be considered are the private interests of the litigants and the public's interest in the administration of justice. *Id.* The litigants' interests include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling witnesses; the cost of obtaining attendance of willing witnesses; possibility of a view of the premises; and other practical problems that make trial of the case easy, expeditious and

inexpensive. *Id.* Public interests include: docket congestion; the burden of trial to a jurisdiction with no relation to the cause of action; the value of holding trial in a community where the public affected live; and the familiarity of the court with controlling law. *Id.* at 945-46. Finally, the plaintiff's choice of forum is given considerable weight and the balance of convenience, considering all of the relevant factors "should be strongly in favor of a transfer before such will be granted." *Id.* at 946 (citing *Hanning v. New England Mutual Life Insurance Co.*, 710 F.Supp. 213, 214 (S.D.Ohio 1989)).

## THRESHOLD CONSIDERATION

In this case, the CAF wants to transfer this action to either the United States District Court for the Western District of Texas or the United States District Court for the Central District of California and presents argument that this action might have been brought in either of these Courts. To this, the USAF offers no response. Therefore, based upon the CAF's arguments and the USAF's silence, the threshold consideration is satisfied. This action could have been brought in either the United States District Court for the Western District of Texas or the United States District Court for the Central District of California.

The USAF does argue that this action was properly brought in the Southern District of Ohio. To this, the CAF offers no response. The USAF's argument on this issue is well-founded and venue lies in this District. The analysis next turns to the private interests of the litigants.

## PRIVATE INTERESTS OF THE LITIGANTS

The CAF first argues that travel and lodging costs for government employee witnesses have been rejected by courts implying that these costs are not relevant to this matter. However, this argument has three problems. First, the CAF has not shown and it is doubtful whether the

USAF's witnesses are actually government employees in the context of the authority cited by the CAF. Second, the authority cited for this proposition refers to the costs to replace government employees and not to travel and lodging costs. Third, the argument that it is going to cost money to hire somebody to replace witnesses in their absence would seem to apply to the CAF's witnesses as well as to the USAF's non-retired witnesses.

The CAF next argues that the majority of testimonial, documentary and physical evidence is located in Texas or California. In support, the CAF points out that it is a Texas corporation; the Aircraft and the CAF's records on the Aircraft are currently located in Midland, Texas; CAF witnesses and the majority of non-employee CAF witnesses are located in Texas; the Aircraft is currently assigned to the CAF's Southern California Wing; the CAF's incoming sponsor who will fund and oversee the Aircraft's restoration is located in California; the individual who will oversee the refurbishment is "out of" California; and the alleged notice was published by Air Classics, a magazine published in California.

The USAF responds that the disputed documents and other correspondence regarding the Aircraft are with the NMUSAF and/or its parent organization which have always been residents of Dayton, Ohio. Further, final authority for the transfer of the Aircraft was provided by the NMUSAF and the NMUSAF has also kept the government's files and records regarding the Aircraft since its transfer. Finally, the Director of the NMUSAF in Dayton had the responsibility of tracking the loaned Aircraft and learned of the CAF's alleged breach and initiated the communications for the return of the Aircraft.

The USAF also responds that the physical location, condition or maintenance of the Aircraft are not issues in this dispute so its physical location is not relevant. Further, what may happen to the Aircraft in the future and by whom is not relevant to this dispute.

The CAF's third argument is that the "overwhelming majority" of the activities relevant to the USAF's causes of action took place in either Texas or California. In support, the CAF points to evidence that the initial physical transfer of the Aircraft from the USAF to the CAF took place in Texas, the Aircraft was released to the CAF from Kelly Air Force Base in Texas, the Aircraft was operated out of Texas, and the Aircraft was located in California at the time of the planned transaction between the CAF and NPA. In response, the USAF has identified above the administrative activities associated with the Aircraft and argues that it is these administrative activities and not the physical location or condition of the Aircraft that are relevant.

The CAF's fourth argument is that the information identified above establishes that the relative ease of access to sources of proof in this action favors transfer to Texas or California. However, this is merely a summary of the above arguments.

The CAF's fifth argument is that none of their witnesses is subject to compulsory process to appear at trial in Ohio and the USAF's witnesses are party witnesses not subject to the same concerns. The USAF responds that the CAF is, of course, free to choose its witnesses. Further, the CAF has identified no witnesses that it intends to subject to compulsory process.

The CAF's sixth argument is that their non-party witnesses would suffer hardship if they were forced to travel to Ohio to testify in this action. The USAF responds that it is "difficult to imagine" a trial on the question of violation of the reversionary clause of the contract and the decision by the Director of the NMUSAF to repossess the Aircraft without the Director,

custodian of the records and one or two other members of his staff appearing as witnesses. Presumably then, if the trial was held elsewhere, the USAF's witnesses would have to suffer hardship by being forced to travel.

The USAF further argues that most of the potential witnesses identified by Rice appear to have little if any relevant knowledge of the issues in this litigation and there is significant duplication in the proposed testimony of those who may have relevant knowledge. The USAF also argues that, while a few of the potential witnesses identified by Rice "are scattered across the state of Texas," other residences include Florida, Minnesota, California, Kansas and New Mexico. Further, if the venue is moved to California, all but one of the CAF's witnesses would have to travel and if the venue is moved to Midland, Texas, all but three of the witnesses identified by the CAF would have to travel anyway. Finally, the USAF argues that, if the CAF elects to call all of the witnesses that it has identified, it is no worse off than any other civil litigant faced with witnesses who are dispersed over the country who often can and do appear at trial by video conference, video deposition, telephone, and transcribed deposition.

The CAF's final argument is that, "in contrast to a non-profit corporation which operates with significant contributions by volunteers, the United States would be well funded to litigate in Texas or California than the CAF would in Ohio." However, this argument is undermined by at least two faults. First, the CAF has not shown that the NMUSAF is not operated based upon significant contributions of time and money by volunteers. Second, the CAF forgets that, to the extent the government is involved in the NMUSAF, it is spending taxpayer's money.

## PUBLIC INTEREST

Regarding public interest, the CAF first argues that it has absolutely no witnesses in this matter who reside in Ohio or documentary or physical evidence located in Ohio. However, this is not a public interest argument and is addressed above as a private interest.

The CAF next argues that the Aircraft has resided in Texas or California since 1966 and has never been located in Ohio. However, this argument is addressed above and the CAF does not provide any reason why this is a public interest argument.

Finally, the CAF argues that "it would appear the law of Texas or California would govern in this litigation," and a federal court sitting in either Texas or California would undoubtedly be more familiar with the law of its home state.  The USAF responds that this case involves the interpretation of a government contract which is subject to federal law. *See Boyle v. United Technologies Corp.*, 487 U.S. 500, 504 (1988) (state law will be displaced where a significant conflict exists between an identifiable federal policy or interest and the operation of state law).

After surmising that the CAF has raised no viable arguments regarding the public interest, the USAF argues that Ohio has a strong public interest in adjudicating this matter. The NMUSAF and its parent organization, the Air Force Logistics Command, have both always been residents of Ohio and Ohio has a meaningful and multi-faceted relationship with them.

## CONCLUSION

First, the litigants' interests. The location of documents is not generally an important consideration since the documents can readily be transported to the necessary location. That being said, the documents that form the basis of the USAF's Complaint are located in this forum and the CAF has not identified relevant documents that are located in Texas or California.

The CAF makes much of the location of the Aircraft and its maintenance records, the CAF's restoration plans and the location of activities involving the Aircraft. Yet, the Complaint alleges that a contract was breached because the CAF sold the Aircraft without the USAF's knowledge or permission. Therefore, a court can hear testimony and make a determination regarding the contract issue without regard to the physical location or condition of the Aircraft or any facilities or any future restoration plans.

The location of willing witnesses is an important consideration, particularly as it relates to the cost of obtaining their attendance. The USAF's witnesses are located in this venue while the CAF has identified twelve possible witnesses that are located in six different states including Texas and California.

The CAF argues that travel and salary expenses for the USAF would be minimal if this matter were to be adjudicated in Texas or California, while travel and salary expense would be greater for its witnesses to travel to Ohio. Yet, the CAF has not shown that the USAF would not incur travel and salary expenses if this matter was tried in California or Texas. Further, most, of the CAF's witnesses would have to travel regardless of whether this matter was adjudicated in Ohio, California or Texas and several are identified as being retired. Finally, the testimony to be offered by the CAF's witnesses is, in many instances, duplicative and there are other means by which this testimony may be presented.

Unwilling witnesses is not an issue here. Neither party has identified unwilling witnesses and each party is free to select the witnesses that it wishes to present. Finally, a view of the premises is not relevant to this litigation and no additional practical problems regarding a trial have been identified.

In sum regarding the interests of the litigants, the USAF selected this forum to litigate its Complaint, a choice that is given considerable weight. The CAF has not overcome this considerable weight. The CAF has not shown that the litigants' interests weigh strongly, if at all, in favor of transferring the USAF's Complaint to California or Texas.

Turning to the public interest, docket congestion is not discussed by the Parties nor is it currently a problem in this venue. Next, each of the three possible venues has an interest in the litigation. The NMUSAF is a long-time citizen of Ohio while the States of Texas and California may be interested in the rights of the CAF which allegedly has a major presence in both. Finally, the Parties dispute which law is to be applied to this litigation. This Court is familiar with choice-of-law issues and is capable of applying the resulting law, whatever it may be. The Parties do not argue otherwise. The CAF has not shown that the public interests weigh strongly, if at all, in favor of transferring the USAF's Complaint to California or Texas.

In sum, the CAF has not met its burden of showing that the USAF's Complaint should be transferred to California or Texas. Neither the interests of the litigants nor the public interest favor transfer. Therefore, the CAF's Motion To Transfer is OVERRULED.

The CAF has twice attempted to bring an action in California regarding ownership of the Aircraft. The result was voluntary dismissal by the CAF and a stay of this action for several months. It is now time to move on.

After having been reset three times, a Preliminary Pretrial Conference on this litigation is scheduled for October 2, 2007, at 1:30 p.m. Considering the extensive delays thus far, failure to submit a Rule 26(f) report prior to the Preliminary Pretrial Conference may result in sanctions up to and including dismissal and/or default judgment.

**DONE** and **ORDERED** in Dayton, Ohio, this Eighteenth day of September, 2007.

                   **s/Thomas M. Rose**

                _____
                   THOMAS M. ROSE
               UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record